UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Donald and Sheryl Hall, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>U.S. Department of Justice, )<br>)<br>Defendant. )<br>_____) | Case No. 06CV01540 |

DECLARATION OF MARILYN R. LABRIE,
ACTING CHIEF, DISCLOSURE DIVISION,
BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES

I, Marilyn R. LaBrie, do hereby depose and say:

1. I am the Acting Chief, Disclosure Division, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Department of Justice (DOJ). In this capacity, I receive all requests made of ATF under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act of 1974 (PA), 5 U.S.C. § 552a. In this capacity, I also review all requests referred to ATF from other agencies that have located ATF-originated documents in their records while processing their FOIA and PA requests. I am responsible for processing all FOIA and PA requests, initiating searches relevant to such requests, supervising the determination of what records should be disclosed, processing all documents referred to ATF and to other agencies, and recording all administrative appeals filed with ATF.

2. I declare that the statements made in this Declaration are on the basis of knowledge acquired by me in the performance of my official duties.

3. I am familiar with the procedures followed by this office in responding to the FOIA

request made by the Plaintiffs.

### Chronology

4. On January 9, 2006, ATF's Disclosure Division received by mail a FOIA request dated December 28, 2005, from Mr. Donald Hall. By said letter Mr. Hall requested various documents related to an internal ATF investigation. Specifically, Mr. Hall requested specific items including e-mails, reports of investigation, documents and exhibits related to the aforementioned internal investigation. A copy of the letter dated December 28, 2005 is attached as Exhibit A.

5. By letter dated January 18, 2006, ATF's Disclosure Division informed Mr. Hall that it was unclear as to which FOIA category his request would apply. Mr. Hall was advised that the Disclosure Division would begin processing his FOIA request when this issue was clarified.[1] A copy of the letter dated January 18, 2006, is attached as Exhibit B.

6. On February 10, 2006, ATF's Disclosure Division received a letter by fax dated February 10, 2006, from Paul J. Orfanedes of Judicial Watch, Inc. requesting the status of Mr. Hall's December 28, 2005, FOIA request.[2] Mr. Orfanedes indicated that he was representing Mr. Hall in regards to his FOIA request. A copy of the letter dated February 10, 2006, is attached as Exhibit C.

7. By letter dated February 13, 2006, the Disclosure Division acknowledged receipt of Mr. Orfanedes February 10, 2006, letter in which he identified himself as a representative for Mr. Hall. The Disclosure Division informed Mr. Orfanedes that prior to releasing any information

---

[1] On January 20, 2006, the Disclosure Division received a call from someone identifying herself as Ms. Sheryl Hall an ATF employee and representative of Donald Hall. The Disclosure Division informed Ms. Hall that they could not discuss another individual's request without direct authorization. On January 21, 2006, Mr. Donald Hall called the Disclosure Division in response to the January 18, 2006, letter and indicated that he did not wish for his wife to have authority to discuss the FOIA request with the Disclosure Division. Additionally, Mr. Hall verbally chose a fee category and was subsequently informed that ATF would need this decision in writing. ATF never received Mr. Hall's fee category determination in writing.

[2] This same letter was also received by the Disclosure Division on February 17, 2006, by mail.

2

about Mr. Hall the Disclosure Division must receive a notarized authorization executed by his client. A copy of the February 13, 2006, letter is attached as Exhibit D.

8. On February 22, 2006, ATF's Disclosure Division received from Mr. Orfanedes by mail the requested authorization related to Mr. Donald Hall. Additionally, Mr. Orfanedes provided an authorization from Ms. Sheryl L. Hall. A copy of the authorizations dated February 21, 2006 and February 22, 2006, are attached as Exhibit E.

9. By letter dated February 22, 2006, ATF's Disclosure Division acknowledged receipt of the authorizations provided by Mr. Orfanedes. A copy of the February 22, 2006, letter is attached as Exhibit F.

10. By letter dated February 23, 2006, ATF's Disclosure Division advised Mr. Orfanedes that on January 18, 2006, a request was made upon Mr. Hall to define a requestor's category. As previously indicated Mr. Hall did verbally inform the Disclosure Division as to his fee category but the required written response was never received. Finally, the Disclosure Division informed Mr. Orfanedes that until a written response is received no action would be taken. A copy of the February 23, 2006, letter is attached as Exhibit G.

11. On March 6, 2006, the Disclosure Division received a response by letter from Mr. Orfanedes dated February 28, 2006. Mr. Orfanedes stated that his client verbally responded to the Disclosure Specialist to continue this request under Category E. Furthermore, Mr. Orfanedes offered said letter to serve as confirmation of Mr. Hall's choice of a fee category. A copy of the February 28, 2006, letter is attached as Exhibit H.

12. By letter dated April 3, 2006, ATF's Disclosure Division acknowledged receipt of Mr. Orfanedes' February 28, 2006 correspondence which perfected Mr. Hall's original request. ATF informed Mr. Orfanedes that the perfected request was received on March 6, 2006. Additionally,

Mr. Orfanedes was advised that the response may not be forthcoming until May 1, 2006. A copy of the April 3, 2006, letter is attached as Exhibit I.

13. By cover-letter dated April 11, 2006, the Disclosure Division responded in-part to Mr. Hall's FOIA and released 98 pages. Mr. Orfanedes was informed that this was not a final response and additional documents could be expected. By the same letter Mr. Orfanedes was advised that information had been withheld pursuant to FOIA Exemptions (b)(2), (b)(5) and/or (b)(6). Finally, the Disclosure division provided that administrative appeal rights would be provided in the final response. A copy of the April 11, 2006, is attached as Exhibit J.

13. By cover-letter dated April 20, 2006, ATF's Disclosure Division forwarded an additional 37 pages to Mr. Orfanedes. The Disclosure Division again utilized FOIA Exemptions (b)(2), (b)(5) and/or (b)(6) in the response. Mr. Orfanedes was advised that additional documents potentially existed on computer back-up tapes; however, the retrieval of such information could cost $2000.00. Due to the delay in the initial response the Disclosure Division waived two days of fees reducing this figure to $1,200.00. The Disclosure Division informed Mr. Orfanedes that upon receipt of the requested funds the additional search would be effectuated, however, it did not guarantee that additional documents existed. Finally, Mr. Orfanedes was provided with administrative appeal rights. A copy of the April 11, 2006, letter is attached as Exhibit K.

14. On May 15, 2006, the Office of Information and Privacy (OIP) received a FOIA Appeal dated May 9, 2006, from Mr. Orfanedes. A copy of the May 9, 2006, letter is attached as Exhibit L.

15. By letter dated May 23, 2006, OIP advised Mr. Orfanedes that his Administrative Appeal was received on May 15, 2006. A copy of the May 23, 2006, letter is attached as Exhibit M.

16. On September 27, 2006, OIP sent Mr. Orfanedes a letter informing him that his FOIA appeal was denied and ATF's decision affirmed. A copy of the September 27, 2005, letter is attached as Exhibit N.

### Exemptions

### FOIA EXEMPTION (b) (2)
### INTERNAL ADMINISTRATIVE MATTERS

17. Pursuant to Exemption 2, the Disclosure Division withheld:
    - Internal administrative codes used in a Federal criminal law enforcement database
    - Purchase Order codes
    - ATF equipment costs and infrastructure

18. Exemption (b) (2) of the FOIA protects from disclosure material "related solely to the internal personnel rules and practices of an agency," including predominantly internal matters the disclosure of which would risk circumvention of agency regulations or statutes.

19. The redacted information in the records that were provided to Mr. Orfanedes consists of file numbers and other internal administrative codes. This information is for either administrative and/or law enforcement purposes only and is of no legitimate interest to the public. The disclosure of this material is either so trivial it does not warrant release or would risk the circumvention of law enforcement and investigatory efforts.

### FOIA EXEMPTION (b)(5)
### DELIBERATIVE PROCESS

20. Pursuant to Exemption (b)(5), the Disclosure Division withheld:
    - Draft Briefs
    - Draft Affidavits
    - Notes used in preparation for and during trial that concerned prosecutorial strategy

> Special Agents pre-decisional investigational strategy

21. Exemption 5 has been construed to exempt those documents or information normally privileged in the civil discovery context and includes, *inter alia*, the attorney work product privilege and the pre-decisional deliberative process privilege. FOIA Exemption (b)(5) permits the withholding of:

> "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency" 5 U.S.C. § 552(b)(5).

22. The items withheld in full were prepared by ATF Special Agents in conjunction with the internal investigation into potential employee misconduct undertaken by ATF's Office of Professional Responsibility and Security Operations, which accordingly, meet Exemption (b)(5)'s threshold requirement of "inter-agency or intra-agency memorandum."

23. The records withheld under Exemption 5 set forth ATF Special Agents thoughts, impressions, evidence development, and legal theory related to the internal investigation. Special Agents should be free of the fear that their thought processes, investigative strategies, and case evaluations will, at a later time, be made available to the public.

24. The Disclosure Division determined that to reveal the information in question would inhibit the candid, internal discussion necessary for efficient and proper litigation preparation in these types of complex cases and that disclosure would provide insight into the agency's general strategic and tactical approach to investigating internal matters and would therefore harm the very adversarial process which Exemption 5 is designed to protect.

25. The information in question is also clearly deliberative in that the investigative notes consists of the Special Agent's analysis and recommendations regarding the potential violation of

Federal laws. If these recommendations and opinions were exposed to public scrutiny, such a release would have the effect of inhibiting the free flow of recommendations and opinions of Special Agents within the ATF.

### FOIA EXEMPTION (b)(6)
### UNWARRANTED INVASION OF PERSONAL PRIVACY

26. Pursuant to Exemptions (b)(6) the Disclosure Division withheld:

   ➢ the names of Federal law enforcement employees as well as information by which those individuals could be identified

27. FOIA Exemption (b)(6) protects personnel identifying information located in medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

28. Exemption (b)(6) requires a balancing of the individual's right to personal privacy against the public's interest in shedding light on an agency's performance of its statutory duties. The requester's identity, purpose in making the request, and proposed use of the requested information have no bearing on this balancing test.

29. The individuals whose identities have been protected, as set forth above are not the requester. Besides the privacy waivers related to the Hall's no additional waivers were presented that would permit release of any third-party individual's information.

30. Revealing this information is unlikely to add to the public's understanding of how an agency works or how well it performs its duties. On balance, the Disclosure Division determined that the substantial privacy interest, which is protected by withholding this information, outweighs any minimal public interest that would be served by its release. Such a release would be "clearly unwarranted" as required by 5 U.S.C. § 552(b)(6).

31. In processing Plaintiff's request and in furtherance of ensuring that all segregable material was released to plaintiff the Disclosure Division disclosed the names of those individuals within ATF which have decision-making authority.

## ADEQUACY OF THE SEARCH

32. Upon receipt of Mr. Orfanedes FOIA request, the Disclosure Division executed an independent and thorough search for all responsive material. The first step in conducting such a search was to contact the Investigations Division of ATF's Office of Professional Responsibility and Security Operations (OPRSO), as they are the sole division within ATF that conducts internal investigations. The December 28, 2005, request correctly and specifically indicated that this division would contain responsive documents. Upon receipt of the request the Investigations Division queried their internal database which cross-references ATF employees names with background and internal investigation files. As a result of this search the investigation's division located Report of Investigation (ROI) 20050009 dated February 1, 2005. This file included all material used in preparation of the specific ROI requested by Plaintiff.

33. The Disclosure Division also identified and contacted ATF's Office of Equal Employment Opportunities (EEO) as an office that could have responsive material. Plaintiff specifically identified the EEO office in their initial request as a potential location for responsive material. The EEO office undertook a review of their files and found responsive e-mail and memoranda associated with Mrs. Hall. Two senior employees within the EEO office conducted a 5-hour search for responsive material.

34. The third office within ATF contacted by the Disclosure Division was the Office of Science and Technology (OST). Again, Plaintiff specifically identified OST in their initial request as a potential location for responsive material. OST responded to the Disclosure Division by informing them that all "audit activities" related to the investigation of Mrs. Hall were located at the Investigations Division of OPRSO and that they did not maintain such files in their office.

Furthermore, OST informed the Disclosure Division of costs associated with e-mail retrieval, described below at ¶36.

35. As such, and for the reasons as described above, ATF has conducted a search of all locations likely to contain responsive documents using methods reasonably expected to uncover all relevant documents.

## FEES

36. By letter dated April 20, 2006, ATF's Disclosure Division provided Plaintiff with an estimate of $2,000 in fees to process the remainder of the request and that it would do so once Plaintiff agreed to pay a reduced amount of $1,200. This estimated fee was based on an evaluation by the then Acting Division Chief for ATF's Information Services Division. In order to retrieve e-mails which originated in 2003 it would cost $50.78 per hour in accordance with ATF's contract agreement for such services. Furthermore, the Acting Division Chief informed the Disclosure Division that the level of effort necessary for a computer analyst to conduct a full search could take a full week depending on the backup tapes. As such the estimated cost would be $2,000. Plaintiff did not request a fee waiver and gave no indication of a willingness to narrow the scope of the request to reduce fees.

## SEGREGABILITY

37. My staff reviewed each page of the material identified as responsive to determine whether all non-exempt, reasonably segregable information was released to plaintiff. As a result of this review, it has been determined that all non-exempt, reasonably segregable information has now been provided to plaintiff. The <u>Vaughn</u> Index attached hereto describes in detail each document and all meaningful information contained therein.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 22nd day of February 2007.

*Marilyn R. LaBrie*
Marilyn R. LaBrie
Acting Chief, Disclosure Division