**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| DONALD HALL, *et al*., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-1540 (HHK) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, Donald and Sheryl Hall, by counsel, respectfully submit this Opposition to

Defendant's Motion for Summary Judgment submitted by Defendant U.S. Department of Justice

("DOJ"). As grounds thereof, Plaintiffs state as follows:

**MEMORANDUM OF LAW**

**I.    Introduction.**

On December 28, 2005, Plaintiffs served a FOIA request on the U.S. Department of

Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), seeking records related

to a personnel action taken against Plaintiff Sheryl Hall, an ATF employee.[1]  After substantial

delay, Defendant produced 98 pages of highly redacted records to Plaintiffs on April 11, 2006.

On April 20, 2006, Defendant made a second production of highly redacted records to Plaintiffs,

bringing the total number of pages produced to 133.[2]  Dissatisfied with Defendant's production,

---

[1]    Plaintiffs Donald and Sheryl Hall are husband and wife.

[2]    For the Court's reference, Defendant's entire document production is being filed
herewith as Exhibit 1, albeit with a motion to seal to protect Ms. Hall's privacy.  All citations to
these documents will refer simply to their page number.

Plaintiffs filed a timely administrative appeal on May 9, 2006. Plaintiffs initiated this action on

August 31, 2006 when Defendant failed to respond to their timely administrative appeal.

II.    **Argument.**

    A.    **Summary Judgment Framework.**

        In FOIA litigation, as in all litigation, summary judgment is appropriate only when the

pleadings and declarations demonstrate that there is no genuine issue of material fact and that the

moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986); Fed.R.Civ.P. 56(c). In FOIA cases, the agency decisions to "withhold or

disclose information under FOIA are reviewed *de novo* by this court." *Judicial Watch, Inc. v.*

*U.S. Postal Service*, 297 F. Supp. 2d 252, 256 (D.D.C. 2004). In reviewing a motion for

summary judgment under FOIA, the court must view the facts in the light most favorable to the

requestor. *Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

For an agency to prevail, it must "prove that each document that falls within the class requested

either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection

requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978).

    B.    **The Freedom of Information Act and Exemptions.**

        FOIA provides a framework of liberal disclosure for agency records and "provides that all

documents are available to the public unless specifically exempted by the Act itself." *Vaughn v.*

*Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973) (footnote omitted). A responsive record must be

disclosed except where the government meets its burden of showing that the record fits within

one of the specific exemptions. *King v. United States Dep't of Justice*, 830 F.2d 210, 217 (D.C.

Cir. 1987). Exemptions from disclosure "must be construed narrowly, in such a way as to

provide the maximum access consonant with the overall purpose of the Act." *Vaughn*, 484 F.2d at 823.

The most common device used by agencies to meet this burden is the *Vaughn* index. *Vaughn*, 484 F.2d at 826-28. *Vaughn* made clear that "courts will simply no longer accept conclusory and generalized allegations of exemptions." *Id.* at 826. *Vaughn* thus requires that an agency seeking to withhold responsive records under claims of exemption must file a declaration or index that provides "detailed justification" and "[s]pecificity, [s]eparation, and [i]ndexing" of its claimed exemptions. *Id.* at 826-28.

While there is no set form that the *Vaughn* index must take, it is clear that the index *must* include descriptions that enable the requestor and the Court "to derive from the index a clear explanation of why each document or portion of a document withheld" should be exempt from disclosure. *Mead Data Center v. U.S. Department of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977). Because the nature of FOIA "seriously distorts the traditional adversary nature of our legal system's form of dispute resolution" the agency must give a FOIA requester "adequate specificity . . . to assur[e] proper justification by the governmental agency." *Vaughn*, 484 F. 2d at 824, 827. Further, the *Vaughn* Index must indicate that any reasonably segregable information has been disclosed. 5 U.S.C. §552(b); *see also Allen v. CIA,* 636 F.2d 1287, 1293 (D.C. Cir. 1980).

C.      **Defendant's *Vaughn* Index is Insufficient to Satisfy Its Burden.**

The Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has held that an adequate *Vaughn* index is one that contains "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with

3

the particular part of the withheld document to which they apply." *Mead Data*, 556 F.2d at 251; *see also Dellums v. Powell*, 642 F.2d 1351, 1361 (D.C. Cir. 1980). Defendant's *Vaughn* Index fails to satisfy this standard and therefore is inadequate as a matter of law to satisfy Defendant's burden of proving that its exemptions are lawful.

## 1.    Defendant's *Vaughn* Index is Impermissibly Vague.

Defendant's *Vaughn* Index, which is a mere two pages and consists of fifteen entries, is insufficiently specific to permit this Court to make a *de novo* review of Defendant's claims of exemption. For example, page numbers 19-20, 103-132, and 135 are described simply as "E-mail" or "Various e-mails." *Vaughn* Index at 1. A review of the redacted records themselves does not yield any additional information. Not only have the subject lines of the e-mail been redacted, but, in great many instances, the senders and/or recipients of the e-mail have been redacted as well. *See* Page Nos. 103-132 and 135.

In addition to failing to adequately describe the records themselves, Defendant's purported justifications for its redactions are nothing more than boilerplate. Defendant's *Vaughn* Index simply reiterates one or more of the following five (5) rote statements to try to justify its redactions:

- Third party signature [or names and identifying information] contained in an investigative personnel file the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. (Page Nos. 1-11; 2; 8-17; 19-20; 21-98; 99; 100; 103-132; and 133-34)

- Internal codes related solely to the internal rules and practice of ATF. (Page Nos. 2; 103-132; and 133-34)

4

- Inter-agency document which is subject to a privilege, such as documents the disclosure of which would have an inhibitive effect upon the development of policy and administrative direction. (Page Nos. 19-20; 21-98; and 103-32)

- Internal information related to infrastructure disclosure of which could lead to potential circumvention of ATF operations (Page Nos. 21-98; 103-132)

- Material contained in sensitive records such as personnel or medical files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. (Page No. 135)

Defendant's boilerplate language provides neither Plaintiffs nor the Court with a "relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant." *Mead Data*, 556 F.2d at 251.

The Declaration of Marilyn R. LaBrie, Acting Chief, Disclosure Division, Bureau of Alcohol, Tobacco, Firearms and Explosives ("LaBrie Declaration") provides no additional, meaningful information about Defendant's redaction and, in fact, appears to be at substantial odds with both Defendant's *Vaughn* Index and its document production. Ms. LaBrie asserts that the Disclosure Division withheld "Draft Briefs," "Draft Affidavits," "Notes used in preparation for and during trial that concerned prosecutorial strategy," and "Special Agents pre-decisional investigational strategy." *See* LaBrie Declaration at para. 20. However, Defendant's *Vaughn* Index fails to reference any "Draft Briefs" or "Draft Affidavits" being withheld in full, and none of the heavily redacted documents produced by Defendants appear to be anything resembling

5

"Draft Briefs" or "Draft Affidavits." Defendant's April 11, 2006 and April 20, 2006 letters do not reference any responsive documents being withheld in full.[3] *See* LaBrie Declaration at Exhibits J and K. Moreover, there never was any prosecution or trial, so Ms. LaBrie's assertion that "Notes used in preparation for and during trial that concerned prosecutorial strategy" is clearly wrong. No person involved in the ROI is identified as being a "Special Agent," so it is difficult, to say the least, to identify any records that could resemble "Special Agents pre-decisional investigational strategy." Again, the *Vaughn* Index fails to identify any such records, and the heavily redacted records that Defendant produced, which appears to constitute the ROI itself, cannot be described as "pre-decisional." The document itself is the decision.

In addition, Ms. LaBrie does not itemize Defendant's redactions in a document by document manner, but instead provides only categorical descriptions of the redacted information. While some courts have permitted agencies to employ a categorical approach to preparation of a *Vaughn* Index where thousands of records are at issue, the small number of records at issue in this case does not justify such an approach, nor has Defendant attempted to justify such an approach. The D.C. Circuit has consistently held that "categorical descriptions of the redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate," *King*, 830 F.2d at 224, and "affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping." *Campbell v. DOJ*, 164 F.3d 20, 30 (D.C. Cir. 1998).

---

[3]    Ms. LaBrie's declaration represents at paragraph 22 that certain items were "withheld in full," but, again, these items are never identified or itemized. While Defendant's production is missing page numbers 12 and 42, this appears to be an oversight rather than a deliberate withholding.

## 2.    Defendant's *Vaughn* Index Fails to Correlate Its Redactions With its Claims of Exemption.

In addition to requiring *Vaughn* Indexes to be adequately detailed, FOIA also requires an agency to correlate its redaction or withholdings with a particular claim of exemption. The failure of an agency to correlate its redactions with its claims exemptions results in "no more than impermissibly vague 'sweeping and conclusory' citations of exemptions." *Judicial Watch, Inc. v. FBI*, 2006 U.S. Dist. LEXIS 83333, * 18 (D.D.C. November 15, 2006) (quoting *Mead Data*, 565 F.2d at 251). In order to conduct a *de novo* review, a court "must be able to know the nature of the contents of a specific redaction and associate that redaction with a specific exemption." *Id.*

Despite releasing a total of only 133 pages, Defendant failed to correlate *any* of its redactions with its claimed exemptions. Instead, Defendant simply noted its claims of exemptions at the bottom of each page of its production. For pages in which Defendant claims multiple exemptions, this failure is simply unacceptable.[4] In *Judicial Watch, Inc. v. FBI*, 2006 U.S. Dist. LEXIS at *18-20, the Court found that the FBI's half-hearted attempt to use the proximity of its marginal notes to its redactions fell far short of the agency's FOIA obligation to correlate redactions and exemptions. In this case, Defendant has not even attempted to distinguish its various claims of exemptions with its redactions. Defendant thus fails to satisfy its FOIA burden for this additional reason.

---

[4]    The following records are subject to more than one claim of exemption: page numbers 2, 19-20, 27-28, 70-72, 77-78, 110-120, 124-131, 133, and 135.

**D.     Defendant Failed to Produce All Responsive Records or Disclose All of Its Withholdings.**

Plaintiffs do not contest the adequacy of the search performed by Defendant.  Plaintiffs do contest Defendant's claim that it produced the "Report of Investigation (ROI) 20050009" and related materials, as Defendant contends.  *See* Defendant's Motion For Summary Judgment ("Def's Mot.") at 8.  Specifically, attached as Exhibit 2 to the ROI is a document entitled "Closing memorandum."  *See* Page No. 18.  The "Closing memorandum" is a seventy-seven page document.  *See* Page Nos. 21-98.  While the "Closing memorandum itself appears to have been produced, albeit in heavily redacted form, the last three pages of this document consists of a "List of Exhibits" identifying some thirty-six additional documents.  *See* Page Nos. 96-98.  None of these exhibits have been produced to Plaintiffs.

Defendant does not claim to have withheld any of these thirty-six exhibits.  Neither its *Vaughn* Index nor the LaBrie Declaration mention them.  Nonetheless, the failure to produce these clearly responsive exhibits or to disclose the fact that they are being withheld is contrary to both Defendant's FOIA obligations and its own representations to Plaintiff and the Court.  The exhibits must either be produced to Plaintiffs or the withholding justified by a properly prepared *Vaughn* Index and accompanying affidavit.

**E.     Defendant Improperly Withheld Records Pursuant to FOIA Exemptions.**

In addition to failing to provide a sufficiently detailed *Vaughn* Index and failing to produce all responsive records or disclose that additional, responsive records are being withheld, Defendant has failed to satisfy its burden with respect to its redactions pursuant to FOIA

Exemptions 5 and 6.[5]  For this additional reason, Defendant's motion for summary judgment

must be denied.

1.    **Defendant Improperly Withheld Records Pursuant to the Deliberative Process Privilege of Exemption 5.**

Exemption 5 of FOIA authorizes the withholding of records that an agency demonstrates

are:  "inter-agency or intra-agency memorandums or letters which would not be available by law

to a party other than an agency in litigation with the agency ...."  5 U.S.C. § 552(b)(5).  This

provision exempts from disclosure those records normally privileged in the civil discovery

context.  While this statutory language has been interpreted broadly to incorporate "all civil

discovery rules into FOIA [Exemption 5]" (*Martin v. Office of Special Counsel*, 819 F.2d 1181,

1185 (D.C. Cir. 1987)), each discovery rule or privilege asserted by an agency in any particular

case must be construed narrowly to effect FOIA's overall purpose of liberal disclosure.  *NLRB v.

Sears, Roebuck & Co.*, 421 U.S. 132, 148-49 (1975) (citations omitted); s*ee also Mapother v.

Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993) ("[Exemption 5], like all FOIA exemptions,

must 'be construed as narrowly as consistent with efficient government operation.'").  The

Supreme Court has recognized three primary privileges protected by this exemption, but

Defendant has invoked only the deliberative process privilege.

The deliberative process privilege protects from disclosure "any documents that reveal an

agency's deliberative process in reaching policy decisions." *Judicial Watch, Inc. v. U.S. Postal

Service*, 297 F. Supp. 2d 252, 258 (D.D.C. 2004), *see NLRB*, 421 U.S. at 150.  In order to invoke

---

[5]    Plaintiffs do not contest the use of Exemption 2 to redact internal administrative codes, purchase order codes, or AFT equipment costs and infrastructure.  *See* LaBrie Declaration at para. 17.  Plaintiffs do contest Defendant's failure to correlate withholdings under Exemption 2 with specific redactions.  *See* § II.C.2, *infra*.

the deliberative process privilege properly, an agency must demonstrate that a record is both predecisional and deliberative. *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975). Documents are predecisional when they are prepared prior to the adoption of a final agency policy. *NRLB*, 421 U.S. at 151-52. Additionally, the agency "must also either 'pinpoint an agency decision or policy to which the document contributed,' or identify a decisionmaking process to which a document contributed." *Judicial Watch, Inc.*, 297 F. Supp.2d at 259. (internal citations omitted). Documents are deliberative when they "reflect the give-and-take of the consultative process." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). The agency bears the burden of demonstrating that the record satisfies both requirements. *Id.*

Defendant attempts to invoke Exemption 5 to justify redaction of the following records: page numbers 19-20, 27-28, 70-72, 77-78, and 110-31. However, Defendant fails to establish "what deliberative process is involved, and the role played by the documents in issue in the course of that process." *Coastal States Gas Corp.*, 617 F.2d at 868. In this regard, Defendant has failed to "identify *specific* final decisions or decisionmaking processes to which the documents contributed." *Judicial Watch, Inc.*, 297 F. Supp. 2d at 264 (emphasis in original). Defendant's failure to identify any agency decision likely stems from the fact that it simply cannot do so. With the possible exception of page numbers 133-34, which is an Incident Report, and page number 135, which is a stray e-mail (neither of which Defendant claims is subject to Exemption 5), Defendant's entire production consists of the ROI. Nothing in this document can be described as being predecisional because the document itself is the decision. Much like a

10

memorandum opinion and order entered by a court, the ROI sets forth the agency's final

determination and provides the basis for that determination.

All of the records subject to Defendant's Exemption 5 assertion are a part of the decision

that is the ROI. Page numbers 19-20, which is Exhibit 1 to the ROI, appears to be an e-mail that

gave rise to the investigation in the first instance.[6] *Compare* Page Nos. 19-20 *with* Page Nos. 8

and 21 ("On June 22, 2004, Executive Assistant (EA) Anthony Torres . . . sent Deputy Assistant

Director (DAD) Roehm . . . an e-mail message regarding an allegation that ATF overpaid Unisys

. . . ("Torres' e-mail message is attached to the report as Exhibit 1."). Similarly, page numbers

27-28, 70-72, and 77-78 are part of Exhibit 2 to the ROI, which is the agency's "Closing

memorandum." Page numbers 27-28 would appear to be a "Summary of the Auditor's

Findings." Page numbers 70-72 and 77-78 would appear to be evidence used to support the final

determination that is the ROI. Page numbers 110-31 constitute Exhibit 6 to the ROI, which is

described as "E-mail messages forwarded to [redacted] from Hall." Presumably, these e-mails

also constituted evidence used to support the final determination of the ROI. Because all of the

redacted information thus constitutes part of the final decision that is the ROI, none of this

---

[6]    The ROI includes a total of six exhibits, which should not be confused with the thirty six missing exhibits to the Closing memorandum, which itself is Exhibit 2 to the ROI. The exhibits to the ROI are identified on the "List of Exhibit" on page number 18 are as follows: Exhibit 1 ("E-mail message from Torres") Page Nos. 19-20; Exhibit 2 ("Closing memorandum") Page Nos. 21 to 98 ); Exhibit 3 ("Brabender's Statement") Page No. 99; Exhibit 4 ("Hall's Affidavit") Page Nos. 100-02; Exhibit 5 "Two e-mails from Hall dated October 8, 2004") Page Nos. 103-08; and Exhibit 6 ("E-mail messages forwarded to [redacted] from Hall") Page Nos. 109-32.

information can be characterized as "predecisional" and, therefore, it is not subject to Exemption 5.[7]

  In addition, Defendant fails to demonstrate that any harm will result if the redacted information contained in the ROI is disclosed to Plaintiffs.  In *Mead Data*, the D.C. Circuit reversed the lower court's decision allowing the agency to withhold documents under Exemption 5.  With respect to the deliberative process privilege, the D.C. Circuit held that conclusory allegations of possible harm were insufficient to justify withholding the records at issue.  *Mead Data*, 566 F.2d at 258.  Rather, the Court declared that the agency must "show by specific and detailed proof that disclosure would defeat, rather than further, the purposes of FOIA."  *Id.*  In *Judicial Watch, Inc. v. U.S. Postal Service*, this Court followed *Mead* in rejecting many of the agency's Exemption 5 withholdings.  This Court found that the agency's failure to "identify the specific harm" was insufficient.  *Judicial Watch, Inc.*, 297 F Supp.2d at 265.  The Court held that, because the deliberative process privilege "exists to prevent injury to agency decisionmaking," the agency's allegation of harm "could not merely be presumed."

  Defendant's assertions of harm suffer from these same fatal omissions.  Defendant makes two generalized assertions regarding the alleged harm that might result from releasing the redacted information contained in the ROI:  (1) revealing the information would "inhibit the candid, internal discussion necessary for efficient and proper litigation preparation in these types of complex cases;" and (2) disclosure "would provide insight into the agency's general strategic

---

[7]  Defendant's attempt to use *Federal Open Market Committee v. Merrill*, 443 U.S. 340, 360 (1979) for the proposition that Exemption 5 provides blanket protection for final agency decisions is disingenuous at best.  *Merrill* held that Exemption 5 incorporated a qualified privilege for confidential commercial information.  To Plaintiffs' knowledge, no court, including the U.S. Supreme Court, has ever used *Merrill* in the broad manner Defendant suggests.

and tactical approach to investigating internal matters and would therefore harm the very

adversarial process which Exemption 5 is designed to protect."  Def's Mot. at 15.  This

boilerplate language hardly qualifies as "specific and detailed proof," much less proof that relates

to the specific redactions at issue.

       Moreover, Defendant's assertion of harm are not in accordance with the protections

afforded by the deliberative process privilege.  Not only was there no litigation here, but

"litigation preparation" is not protected by the deliberative process privilege.  Rather, "litigation

preparation" falls into the realm of either the attorney client privilege or the attorney work

product doctrine, neither of which Defendant has attempted to invoke.  Similarly, guarding

against disclosures that "would provide insight into [an] agency's general strategic and tactical

approach to investigating internal matters" also is not protected by the deliberative process

privilege.  Rather, it falls into the realm of Exemption 7, which Defendant has not attempted to

invoke either.  *See*, *e.g.*, *Tax Analysts v. IRS*, 294 F.2d 71, 79 (D.C. Cir. 2002).  Simply put,

Defendant has failed to demonstrate that releasing the information redacted from the ROI

pursuant to Exemption 5 will prevent any of the types of harm protected by the deliberative

process privilege.

       The LaBrie Declaration provides no additional support for Defendant's assertions of

harm.  In her declaration, Ms. LaBrie simply repeats the same generalized assertions set forth in

Defendant's motion.  *See* LaBrie Declaration at paras. 22-25.  In fact, far from supporting

Defendant's legal arguments, the LaBrie Declaration only raises substantial questions about

Defendant's Exemption 5 redactions.

13

Ms. LaBrie represents in her declaration that the information at issue was withheld under Exemption 5 because it "set[s] forth ATF Special Agents (sic) thoughts, impressions, evidence development, and legal theory related to the internal investigation." LaBrie Declaration at para. 23. She also represents that the information at issue includes "investigative notes," which, again, were not disclosed anywhere on Defendant's *Vaughn* Index, that "consist[] of the Special Agent's analysis and recommendations regarding the potential violation of Federal laws." LaBrie Declaration at para. 25. However, not only does Ms. LaBrie fail to identify any of the authors of the redacted information as being Special Agents, but a review of the majority of Defendant's Exemption 5 redactions appears to indicate this is not the case. Page numbers 19-20 are an exchange of e-mail between ATF personnel on June 22-23, 2004. These personnel include EEO Executive Assistant Anthony Torres, Deputy Assistant Director Linda Cureton, Operations Branch Chief Lois Loser, Deputy Assistant Director Jeffrey Roehm, and Assistant Director Richard Chase. None of these persons are identified as "ATF Special Agents," nor would they appear to be such. Similarly, page numbers 110-31 are e-mail messages from Ms. Hall. *See* Page Nos. 18, 110-31. Certainly, she is not an ATF Special Agent. There simply is no legitimate concern that the release of any of these records in unredacted form would disclose anything having to do with an ATF Special Agent.

To the extent Ms. LaBrie may be referring to information contained in the Closing memorandum, which appears to have been prepared by an unidentified Special Agent but Ms. LaBrie never states as much, then the redacted information would appear to be a factual summary of auditor Jim Brabender's findings and summaries of interviews with fact witnesses. *See* Page Nos. 27-28, 70-72, and 77-78. If this is the case, then the information would appear to constitute

14

purely factual material that should not have been redacted under Exemption 5 in any event. At a minimum, all factual material that could be segregated from these pages should have been produced to Plaintiffs. Nonetheless, far from clarifying Defendant's assertions of harm, Ms. LaBrie's declaration only confuses the issue. Defendant has failed to meet its burden of proof to satisfy the application of Exemption 5 as a matter of law.

### 2.    Defendant Improperly Withheld Records Pursuant to FOIA Exemption 6.

In order for an agency to withhold information under Exemption 6 properly, the agency must demonstrate that the information is both a personnel, medical, or similar file, *and* that the disclosure of the information would constitute a clearly unwarranted invasion of privacy. FOIA's Exemption 6 authorizes agencies to withhold from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *See U.S. Dep't of Justice v. Reporter's Committee For Freedom of the Press*, 489 U.S. 749, 755 (1989); 5 U.S.C. § 552(b)(6). It is undeniably the agency's burden to make these demonstrations. *Id.* In addition, "similar files" are defined to include any "Government records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 601 (1982). These are the only types of records to which Exemption 6 applies. Finally, if the privacy interests in the information at issue is *de minimis*, the disclosure does not amount to a '"clearly unwarranted invasion of personal privacy." *Ripskis v. Dep't of Housing and Urban Dev.*, 746 F.2d 1, 3 (D.C. Cir. 1984).

Defendant's use of Exemption 6 is improper for at least three reasons: (1) it fails to undertake the first prong of the Exemption 6 analysis; (2) it applies Exemption 6 too broadly; and (3) it applies Exemption 6 inconsistently.

### a. Failure to Apply Required Analysis.

In *National Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002), the D.C. Circuit held that "the threshold question is whether the requested information is contained in a personnel, medical, or similar file." *See also Board of Trade v. Commodity Futures Trading Commission*, 627 F.2d 392, 398 (D.C. Cir. 1980) ("Once the first prong of the statutory test is met, the court must proceed to weigh the privacy concerns against the public interest in general disclosure."). Rather than even attempting to address this first prong of the Exemption 6 analysis by identifying specific individuals, other than Ms. Hall, to whom the ROI "applies," Defendant jumps directly to the second prong of the Exemption 6 test. Like its failure to make the required threshold showing, for purposes of its Exemption 5 claims, that any portion of the information redacted from the ROI is "predecisional," Defendant also fails to make the required threshold showing, for purposes of its Exemption 6 claims, that the ROI constitutes a personnel, medical, or similar file that can be identified as applying to an individual.[8] In fact, if the ROI "applies" to anyone, it applies to Ms. Hall, not any of the persons whose names merely appear in the ROI.

### b. Overuse of Exemption 6 and Failure to Reasonably Segregate.

While Plaintiffs do not concede that the mere mention of an individual's name in a government record makes that record a personnel, medical, or similar file that "applies" to that

---

[8]    The LaBrie Declaration is similarly silent on this point. The Declaration simply bypasses the first two steps of the Exemption 6 analysis. LaBrie Declaration at paras. 28-30.

individual, Defendant claims that it has redacted only names and identifying information from the ROI. Defendant's *Vaughn* Index describes the withheld information as "[t]hird party names and identifying information contained in an investigative personnel file the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *See Vaughn* Index at entries for Page Nos. 2, 8-17, 19-20, 21-98, 99, 100, and 103-132. Similarly, Ms. LaBrie's declaration describes the redacted information as "the names of Federal law enforcement employees as well as information by which those individuals could be identified." *See* LaBrie Declaration at para. 26. However, even a cursory review of the pages of the ROI redacted under Exemption 6 demonstrates that Defendant has redacted far more than merely "names and identifying information." It has redacted entire sentences, paragraphs, and sometimes even entire pages. It also appears to have redacted dates.

For example, on page numbers 19-20, Defendant generally disclosed the names of the parties to a series of e-mail exchanges, but redacted the actual text of the exchanges themselves. Defendant redacted both names and the text of the e-mail exchanges on page numbers 110-131. In a great many instances, Defendant redacted nearly all of the substantive information on an entire page, if not the entire page. *See* Page Nos. 27-86 and 99. It simply cannot be possible that the information redacted on these pages consists only of names and identifying information about what presumably is a small number of individuals.

Moreover, it is clear from looking at the records themselves that the redacted information consists of more than mere names and identifying information, but also included substantive, factual information, including summaries of findings and witness statements. On page numbers 27 and 28, Defendant has redacted everything under that appears under the heading "Summary of

the Auditor's Findings." Clearly, Defendant has redacted more than Auditor Jim Brabender's

name and identifying information, as one would be lead to believe from reviewing only

Defendant's *Vaughn* Index and/or the LaBrie declaration.  It has redacted his actual conclusions

as well.  Likewise, on page number 29, which is entitled "Summary of Witness Statements and

Exhibits," Defendants have redacted more than the first witness' name and identifying

information.  Rather, it has redacted the entirety of the witness' statement, citing only Exemption

6:

> On [redacted] 2004, SA [redacted], OPR, along with Auditors [redacted] and
> [redacted] interviewed [redacted], ISD, under oath, at [redacted].  During the
> interview, [redacted] in essence stated the following:  [redacted]

*See* Page Nos. 29-32.  This same type of redaction appears over and over throughout page

numbers 27-86.  On page number 99, the entire page has been redacted except for the ROI

number and exhibit number.

Defendant also redacted nearly all of the dates from these same pages.  *See* Page Nos. 29,

32, 35, 38, 40, 44, 45, 46, 47, 50, 52, 53, 56, 61, 62, 64, 65, 69, 70, 71, 73, 79, 80, 81, and 83.

Just by way of example, page number 32 states, "On [redacted] 2004, SA [redacted] . . . ."  This

first redaction clearly constitutes a date, not a name or identifying information.  It is difficult to

conceive of how a date could possible constitute a personnel, medical, or similar file "applying"

to an individual.

In sum, it cannot be disputed that Defendant has redacted far more than mere names and

identifying information under Exemption 6.  Contrary to its *Vaughn* Index and the LaBrie

Declaration, it has redacted substantive, factual information as well, albeit without making any

effort to even acknowledge its extensive redactions.  Clearly, Defendant has overused Exemption

6.  At a minimum, Defendant has the obligation to release all reasonably segregable information. *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239,1242 (D.C. Cir. 1991); *Judicial Watch, Inc. v. FBI*, 2006 U.S. Dist. LEXIS at *20-21.  It would appear that Defendant has not even attempted to satisfied this obligation either.

### c.    Inconsistent Use of Exemption 6.

Lastly, Defendant demonstrates its improper application of Exemption 6 by applying the exemption inconsistently.  For example, page number 11 includes a reference to "Exhibit 3, [redacted]'s statement."  Page number 18, which is the List of Exhibits for the ROI, clearly identifies Exhibit 3 as "Brabender's Statement."  There can be no doubt that the individual whose statement is referenced on page number 11 is James Brabender.  Similarly, page number 83 refers to "Exhibit 32, E-mail message from [redacted] dated [redacted], 2004."  Page number 98, which is the List of Exhibits to the Closing memorandum, clearly identifies this individual as Linda Cureton and that date of the e-mail as September 22, 2004.  Both Brabender and Cureton are individuals pertinent to the investigation; Brabender was the Acting Chief of Audit Services Division and Cureton was the Deputy Assistant Director.  Although Defendant claims that it did not redact "those individuals within the ATF which have decision-making authority" (Def's Mot. at 19), this clearly is not the case, as both Brabender and Cureton are individuals with decision-making authority at ATF.

Page number 78 provides another example of Defendant's inconsistent application  of Exemption 6.  Page number 78 refers to "Exhibit 27, E-mail from Baran dated August 26, 2004." However, Baran's name is redacted from the description of Exhibit 27 on page number 97,

which, again, is the List of Exhibits to the Closing memorandum. Again, Defendant's application of Exemption 6 is inconsistent.

Defendant's inconsistent application of Exemption 6 – and there are a great many of them – calls into question the overall accuracy of Defendant's redactions.[9] Moreover, the inconsistence of Defendant's redactions demonstrates the truly *de minimis* nature of the alleged privacy rights Defendant purports to protect. Under the circumstances, disclosure of the names of the individuals referenced in the ROI simply does not amount to a "clearly unwarranted invasion of personal privacy" especially with respect to those persons whose names are not redacted consistently. *Ripskis*, 746 F.2d at 3.

By contrast, Plaintiffs have a compelling interest in obtaining unredacted versions of the records at issue. After all, it was Ms. Hall who was the subject of the ROI. The interest of Ms. Hall and her husband in these unredacted records far outweighs any alleged privacy interest of persons whose names were redacted inconsistently from the ROI or whose findings or statements are summarized in the report. The records should be produced to Plaintiffs without Defendant's Exemption 6 redactions. *Board of Trade*, 627 F.2d at 398.

---

[9]    Most of the inconsistencies in Defendant's document production concern the factual circumstances surrounding Ms. Hall's official reprimand. Page numbers 3-5 is a Notice of Official Reprimand, which both describes the events that lead up to the reprimand and identifies what would appear to be the names of nearly all, if not all of the individuals who were involved in those events, including Anthony Torres, Lois Loser, James Brabender, and Francis Frande. However, throughout the remainder of the production, the names of these same individuals are redacted or partially redacted from other descriptions of these same events. For example, page numbers 9 and 10 describe the very same events described in page numbers 3-5, yet the names James Brabender and Lois Loser are redacted. Defendant's inconsistent redactions produce an absurd result.

20

III.     **Conclusion.**

For the foregoing reasons, Defendant's motion for summary judgment should be denied.

Dated:  March 19, 2007                              Respectfully submitted,

                                                    JUDICIAL WATCH, INC.

                                                    /s/ Paul J. Orfanedes
                                                    D.C. Bar No. 429716
                                                    Meredith L. Di Liberto
                                                    D.C. Bar No. 487733
                                                    Suite 500
                                                    501 School Street, S.W.
                                                    Washington, DC 20024
                                                    (202) 646-5172


                                                    *Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DONALD HALL, *et al.*,                    )
                                          )
                    Plaintiffs,           )
                                          )
v.                                        )          Civil Action No. 06-1540 (HHK)
                                          )
U.S. DEPARTMENT OF JUSTICE,               )
                                          )
                    Defendant.            )
_____)

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF
MATERIAL FACTS AS TO WHICH THERE
<u>IS NO GENUINE DISPUTE</u>**

Plaintiffs, Donald and Sheryl Hall, deny as a general matter that Defendant has produced

an adequate Vaughn index, produced all responsive records or properly withheld the responsive

records at issue pursuant to FOIA Exemptions 5 and 6 because, as demonstrated in more detail in

Plaintiffs' Opposition, Defendant has failed as a matter of law to carry its FOIA burdens.

Plaintiffs also deny that all reasonably segregable information has been released to Plaintiffs.

Notwithstanding Plaintiffs' legal arguments, Plaintiffs respond to Defendant's statement of facts

as follows:

        1.        Undisputed.

        2.        Undisputed.  The footnote is immaterial.

        3.        Undisputed.

        4.        Undisputed.

        5.        Undisputed.

        6.        Undisputed.

7.      Immaterial.

8.      Undisputed.

9.      Undisputed.

10.     Undisputed.

11.     Immaterial.

12.     Undisputed.

13.     Undisputed.

14.     Undisputed.

Dated: March 19, 2006                    Respectfully submitted,
                                         JUDICIAL WATCH, INC.

                                         /s/ Paul J. Orfanedes
                                         D.C. Bar No. 429716
                                         Meredith L. Di Liberto
                                         D.C. Bar No. 487733
                                         Suite 500
                                         501 School Street, S.W.
                                         Washington, DC 20024
                                         (202) 646-5172

                                         *Attorneys for Plaintiffs*

2