UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **DONALD HALL,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **SHERYL HALL,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civil Action No. 06-1540 (HHK)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **UNITED STATES DEPARTMENT OF JUSTICE,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

### DEFENDANT'S SECOND
### MOTION FOR SUMMARY JUDGMENT

Defendant, the United States Department of Justice, pursuant to Fed. R. Civ. P. 56, moves for summary judgment because there are no material facts in dispute in this action under the Freedom of Information Act, 5 U.S.C. § 552, as amended, and defendant is entitled to judgment as a matter of law. In support of this motion, defendant respectfully refers the Court to the attached Memorandum of Points and Authorities. Pursuant to Local Rule 7(h), defendant also attaches hereto defendant's statement of material facts as to which there is no genuine issue and a proposed Order.

Respectfully submitted,

  /s/
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

_/s/_
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_/s/_
CHARLOTTE A. ABEL, D.C. Bar # 388582
Assistant United States Attorney

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **DONALD HALL,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **SHERYL HALL** | ) | |
| | ) | |
| Plaintiffs, | ) | **Civil Action No. 06-1540 (HHK)** |
| | ) | |
| v. | ) | |
| | ) | |
| **UNITED STATES DEPARTMENT** | ) | |
| **OF JUSTICE,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNITED STATES DEPARTMENT OF JUSTICE'S MOTION FOR SUMMARY JUDGMENT

### Introduction

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act ("PA"), 5 U.S.C. § 552a, and pertains to the processing of Plaintiffs' FOIA request by the United States Department of Justice ("DOJ").  The attached declaration of Marilyn R. LaBrie, Acting Chief, Disclosure Division, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") DOJ, describes the responses to Plaintiffs' FOIA request.

## Factual and Procedural Background

On January 9, 2006, ATF's Disclosure Division received by mail a FOIA request dated December 28, 2005, from Mr. Donald Hall. See Declaration of Marilyn R. LaBrie ("LaBrie Decl.") ¶ 4 and Exhibit A attached hereto. By said letter plaintiff requested various documents related to an internal ATF investigation. Id. Specifically, plaintiff requested items including e-mails, reports of investigation, documents and exhibits related to the aforementioned internal investigation. Id.

By letter dated January 18, 2006, ATF's Disclosure Division informed plaintiff that it was unclear as to which FOIA fee category would apply to his request. LaBrie Decl. ¶ 5. Plaintiff was advised that the Disclosure Division would begin processing his FOIA request when this issue was clarified.[1] Id. and Exhibit B attached hereto. On February 10, 2006, ATF's Disclosure Division received a letter by fax dated February 10, 2006, from Paul J. Orfanedes of Judicial Watch, Inc. requesting the status of plaintiff's December 28, 2005, FOIA request.[2] Id. ¶ 6. Mr. Orfanedes indicated that he was representing the plaintiff in regards to his FOIA request. Id. and Exhibit C attached hereto. By letter dated February 13, 2006, the Disclosure Division acknowledged receipt of Mr. Orfanedes' February 10, 2006, letter in which he identified himself as a representative for Mr. Hall. Id. ¶ 7. The Disclosure Division informed Mr. Orfanedes that prior to releasing any information about the plaintiffs, the Disclosure Division must receive a notarized authorization

---

[1] On January 20, 2006, the Disclosure Division Staff received a call from someone identifying herself as Ms. Sheryl Hall, an ATF employee, and representative of Donald Hall. The Disclosure Division Staff informed Ms. Hall that it could not discuss another individual's request without direct authorization. On January 21, 2006, Mr. Donald Hall called the Disclosure Division in response to the January 18, 2006, letter and indicated that he did not wish for his wife to have authority to discuss the FOIA request with the Disclosure Division. Additionally, Mr. Hall verbally chose a fee category and was subsequently informed that ATF would need this decision in writing. ATF never received Mr. Hall's fee category determination in writing.

[2] This same letter was also received by the Disclosure Division on February 17, 2006, by mail.

executed by his client.  Id.  and Exhibit D attached hereto.  On February 22, 2006, ATF's Disclosure Division received from Mr. Orfanedes by mail the requested authorization related to Mr. Donald Hall.  Id.  ¶ 8.  Additionally, Mr. Orfanedes provided an authorization from Ms. Sheryl L. Hall.  Id.  and Exhibit E attached hereto.  By letter dated February 22, 2006, ATF's Disclosure Division acknowledged receipt of the authorizations provided by Mr. Orfanedes.  Id.  ¶ 9 and Exhibit F attached hereto.

By letter dated February 23, 2006, ATF's Disclosure Division advised Mr. Orfanedes that on January 18, 2006, a request was made upon plaintiff to define a requestor's fee category.  LaBrie Decl. ¶ 10.  As previously indicated, plaintiff did verbally inform the Disclosure Division as to his fee category but the required written response was never received.  Id.  Finally, the Disclosure Division informed Mr. Orfanedes that until a written response was received no action would be taken. Id.  and Exhibit G attached hereto.  On March 6, 2006, the Disclosure Division received a response by letter from Mr. Orfanedes dated February 28, 2006.  Id.  ¶ 11.  Mr. Orfanedes stated that his client verbally responded to the Disclosure Specialist to continue this request under Category E. Id.  Furthermore, Mr. Orfanedes offered said letter to serve as confirmation of the plaintiff's choice of a fee category.  Id.  and Exhibit H attached hereto.

By letter dated April 3, 2006, ATF's Disclosure Division acknowledged receipt of Mr. Orfanedes' February 28, 2006 correspondence which perfected plaintiff's original request.  Id.  ¶ 12. ATF informed Mr. Orfanedes that the perfected request was received on March 6, 2006.  Id. Additionally, Mr. Orfanedes was advised that the response might not be forthcoming until May 1, 2006.  Id.  and Exhibit I attached hereto.

By cover-letter dated April 11, 2006, the Disclosure Division responded in-part to plaintiff's

3

FOIA request and released 98 pages. LaBrie Decl. ¶ 13. Mr. Orfanedes was informed that this was not a final response and additional documents could be expected. Id. By the same letter Mr. Orfanedes was advised that information had been withheld pursuant to FOIA Exemptions (b)(2), (b)(5) and/or (b)(6). Id. Finally, the Disclosure Division provided that administrative appeal rights would be provided in the final response. Id. and Exhibit J attached hereto.

By cover-letter dated April 20, 2006, ATF's Disclosure Division forwarded an additional 37 pages to Mr. Orfanedes. LaBrie Decl. ¶ 13. The Disclosure Division again utilized FOIA Exemptions (b)(2), (b)(5) and/or (b)(6) in the response. Id. Mr. Orfanedes was advised that additional documents potentially existed on computer back-up tapes; however, the retrieval of such information could cost $2,000.00. Id. Due to the delay in the initial response the Disclosure Division waived two days of fees reducing this figure to $1,200.00. Id. The Disclosure Division informed Mr. Orfanedes that upon receipt of the requested funds the additional search would be effectuated, however, it did not guarantee that additional documents existed. Id. Finally, Mr. Orfanedes was provided with administrative appeal rights. Id. and Exhibit K attached hereto.

On May 15, 2006, the Office of Information and Privacy (OIP) received a FOIA Appeal dated May 9, 2006, from Mr. Orfanedes. LaBrie Decl. ¶14 and Exhibit L attached hereto. By letter dated May 23, 2006, OIP advised Mr. Orfanedes that his Administrative Appeal was received on May 15, 2006. Id. ¶15 and Exhibit M attached hereto. On September 27, 2006, OIP sent Mr. Orfanedes a letter informing him that his FOIA appeal was denied and ATF's decision affirmed. Id. ¶ 16 and Exhibit N attached hereto.

The defendant's first motion for summary judgment was denied. [Dk.# 18]. The Court found that DOJ did not describe some of the redactions with specificity, nor did it match up its

4

redactions with particular exemptions. Mem. Op. at 3. Specifically, the Court found that DOJ did not sufficiently describe the contents of e-mails listed at pages 110-132 referenced in the *Vaughn* index. Mem. Op. at 4. The Court also found that DOJ did not identify in the *Vaughn* index which exemption applied to the redactions in e-mails at pages 19-20 and 110-132. Id. With regard to Exemption 5 (which encompasses the deliberative process privilege, the attorney-client privilege, and the attorney work product privilege), the Court found that DOJ <u>did</u> meet its burden to show that it was entitled to withhold information on pages 19-20 and 78, but <u>did not</u> meet its burden for the remaining pages. Mem. Op. at 6. Moreover, the Court found that DOJ did not demonstrate that harm would result from disclosure. *Id.* With regard to Exemption 6, the Court found that DOJ did not show that the privacy of the individual employees, whose names were redacted, was threatened. Mem. Op. at 9. In addition, the Court decided that names of employees must be disclosed if they were redacted in some instances, but not in others. <u>Id.</u> The Court cited <u>Davis v. U.S. Dep't of Justice,</u> 968 F. 2d 1276, 1280 (D.C. Cir. 1992) as the grounds for this ruling, finding that once information is in the public domain, the FOIA exemptions do not apply. <u>Id.</u> Defendant has moved the Court for reconsideration of this issue. Finally, with regard to segregability, the Court found that there was not enough information in the record regarding the precise nature of the redactions for it to rule on this issue. Mem. Op. at 10.

In this, its second motion for summary judgment, Defendant specifically addresses the deficiencies that the Court found in defendant's original supporting documentation. Defendant has amended its *Vaughn* index and filed a supplemental affidavit in support of its second motion for summary judgment. In particular, the index and the second supplemental affidavit provide information that the Court found lacking in the first motion regarding how disclosure would harm

the decision-making process and would threaten employee privacy interests.[3]  In addition, the revised

Index and declarations provide additional detail about the e-mails at 110-132.  The Index now

includes short descriptive phrases, such as "budget estimates for particular programs and how the

internal process works" or "how the budget is coded".  In regard to identifying applicable exemptions

for pages 19-20 and pages 110-132, the revised Index and the declaration correlate the exemptions

to particular redactions.  The second supplemental declaration by Graham clarifies the deliberative

process privilege for emails at pages 110-132.  The revised index and the second supplemental

declaration provide the Court with additional information on which to find that all segregable

information that is meaningful has either been released or properly withheld.

    **I.**      **Defendant Is Entitled to Summary Judgment**

        **A.**        **Standard for Summary Judgment**

FOIA cases are typically decided on motions for summary judgment.  See Cappabianca v.

Commissioner, United States Customers Serv., 847 F.Supp. 1558, 1562 (M.D. Fla. 1994) ("once

documents in issue are properly identified, FOIA cases should be handled on motions for summary

judgment") (citing Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993)).[4]  To be entitled to summary

judgment, the agency must prove that each document was produced, not withheld, is unidentifiable,

or is exempt from disclosure.  Weisberg v. United States Dept. of Justice, 627 F.2d 365, 368 (D.C.

Cir. 1980).  To meet its burden, the defendant may rely on affidavits or declarations and other

---

    [3]      The defendant incorporates by reference Defendant's motion for reconsideration [Dk. # 26] which contains argument regarding employee privacy interests.

    [4]      For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to de novo review by the courts.  Hayden v. National Security Agency/Cent. Sec. Serv., 608 F.2d 1381, 1384 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980).

evidence by the agency which show that the documents are exempt from disclosure. <u>Hayden v. National Security Agency Cent. Sec. Serv.</u>, 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), <u>cert. denied</u>, 446 U.S. 937 (1980); <u>Church of Scientology v. United States Department of Army</u>, 611 F.2d 738, 742 (9th Cir. 1980). Summary judgment may be granted solely on the basis of agency affidavits [or declarations] if they "contain reasonably detailed descriptions of the documents and allege facts sufficient to establish that the documents are within the FOIA exemption category; the district court need look no further." <u>Citizens Commission on Human Rights v. FDA</u>, 45 F.3d at 1329; <u>Bowen v. FDA</u>, 925 F.2d 1224, 1227 (9th Cir. 1991). <u>See also Hayden</u>, <u>supra</u>, 608 F.2d at 1387; <u>Military Audit Project v. Casey</u>, 656 F.2d 724, 738 (D.C. Cir. 1981).

These declarations or affidavits (singly or collectively) are often referred to as a <u>Vaughn</u> index, after the case of <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), <u>cert. denied</u>, 415 U.S. 977, 94 S.Ct. 1564 (1974).[5] There is no set formula for a <u>Vaughn</u> index. It is the content, not the form which is important. "The materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege." <u>Delaney, Midgail & Young, Chartered v. IRS</u>, 826 F.2d 124, 128 (D.C. Cir. 1987). <u>See also Keys v. United States Department of Justice</u>, 830 F.2d 337, 349 (D.C. Cir. 1987); <u>Hinton v. Department of Justice</u>, 844

---

[5] "A <u>Vaughn</u> index must: (1) identify each document withheld; (2) state the statutory exemption claimed; and (3) explain how disclosure would damage the interests protected by the claimed exemption." <u>Citizens Commission on Human Rights v. FDA</u>, 45 F.3d at 1326. "Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA." <u>Founding Church of Scientology v. Bell</u>, 603 F.2d 945, 949 (D.C. Cir. 1979).

F.2d 126, 129 (3d Cir. 1988).[6]

"Summary judgment is available to the defendant in a FOIA case, when the agency proves that it has fully discharged its obligations under FOIA." Miller v. United States Dept. of State, 779 F.2d 1378, 1382 (8th Cir. 1985.) Agencies establish that all of their obligations under the FOIA have been met through declarations and Vaughn indexes. Thus, when the pleadings, supplemented by affidavits or declarations, show no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law, summary judgment should be granted to the defendant. Perry v. Block, 684 F.2d 121 (D.C. Cir. 1982).

### B.    Defendant Has Submitted Proper Vaughn Indices

In moving for summary judgment in a FOIA case, agencies must establish a proper basis for their withholding of responsive documents. "In response to this special aspect of summary judgment in the FOIA context, agencies regularly submit affidavits . . . in support of their motions for summary judgment against FOIA Plaintiffs." Judicial Watch v. U.S. Dept. of Health and Human Services, 27 F. Supp. 2d 240, 242 (D.D.C. 1998). In the case at bar, ATF has submitted supporting declarations and a separate revised Vaughn index in support of this second motion for summary judgment. The declarations were prepared by individuals familiar with the handling of the direct or referred request. Defendant's first declaration was prepared by Marilyn R. LaBrie, Acting Chief, Disclosure Division, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") DOJ. The second was prepared by

---

[6]    "All that is required, and that is the least that is required, is that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." Id. "The degree of specificity of itemization, justification, and correlation required in a particular case will, however, depend on the nature of the document at issue and the particular exemption asserted." Information Acquisition Corp. v. Dept. of Justice, 444 F.Supp. 458, 462 (D.D.C. 1978).

Averill Graham.

### C.    Defendant Has Performed an Adequate Search for Responsive Records, and Has Justified All Withholding under Appropriate FOIA Exemptions.

Where a FOIA plaintiff challenges the adequacy of an agency's search in response to a Freedom of Information Act request, the agency's burden is to establish that it has conducted a search reasonably calculated to uncover all responsive records.  Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  The issue is not whether there might possibly exist other records responsive to the request, but whether the search for responsive records was reasonable.  Id.  The agency can establish the reasonableness of its search by affidavit if it is relatively detailed, non-conclusory, and made in good faith.  Weisberg, 745 F.2d at 1485.  Summary judgment is appropriate where the agency submits a  "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched", unless "a review of the record raises substantial doubt" about the adequacy of the search.  Valencia-Lucena v. United States Coast Guard, 180 F.3d 321, 326 (D.C. Cir. 1999), quoting Oglesby v. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990).

FOIA does not require that an agency search every division or field office in response to a FOIA request when responsive documents are likely to be located in one place.  Marks v. Dep't of Justice, 578 F.2d 261, 263 (9th Cir. 1978).  "When a request does not specify the locations in which an agency should search, the agency has discretion to confine its inquiry to a central filing system if additional searches are unlikely to produce any marginal return; in other words, the agency generally need not 'search every record system.'"  Campbell v. U.S. Dept. of Justice, 164 F.3d 20, 28 (D.C. Cir. 1998), quoting Oglesby, 920 F.2d at 68.  "The agency is not required to speculate about

9

potential leads" to the location of responsive documents, <u>Kowalczyk v. Dep't of Justice</u>, 73 F.3d 386,

389 (D.C. Cir. 1996), although it is required "to follow through on obvious leads to discover

requested documents." <u>Valencia-Lucena</u>, 180 F.3d at 325.

Upon receipt of Mr. Hall's perfected FOIA request, the Disclosure Division executed an

independent and thorough search for all responsive material. LaBrie Decl. ¶ 32. The first step in

conducting such a search was to contact the Investigations Division of ATF's Office of Professional

Responsibility and Security Operations, as they are the sole division within ATF that conducts

internal investigations. <u>Id</u>. The December 28, 2005, request correctly and specifically indicated that

this division would have responsive documents. <u>Id</u>. Upon receipt of the request, the Investigations

Division queried its internal database which cross-references ATF employees' names with

background and internal investigation files. <u>Id</u>. As a result of this search, the investigation's division

located Report of Investigation (ROI) 20050009 dated February 1, 2005. <u>Id</u>. This file included all

material used in preparation of the specific ROI requested by Plaintiff. <u>Id</u>.

The Disclosure Division also identified and contacted ATF's Office of Equal Employment

Opportunities (EEO) as an office that could have responsive material. LaBrie Decl. ¶ 33. Plaintiffs

specifically identified the EEO office in their initial request as a potential location for responsive

material. <u>Id</u>. The EEO office undertook a review of its files and found responsive e-mail and

memoranda associated with the plaintiffs. <u>Id</u>. Two senior employees within the EEO office

conducted a 5-hour search for responsive material. <u>Id</u>.

The third office within ATF contacted by the Disclosure Division was the Office of Science

and Technology ("OST"). LaBrie Decl. ¶ 34. Again, plaintiffs specifically identified OST in their

initial request as a potential location for responsive material. <u>Id</u>. OST responded to the Disclosure

Division by informing it that all "audit activities" related to the investigation of Mrs. Hall were located at the Investigations Division of the Office of Professional Responsibility and Security Operations ("OPRSO") and that it did not maintain such files in its office.  Id.  Furthermore, OST informed the Disclosure Division of costs associated with e-mail retrieval.  Id.  As described, ATF has conducted a search of all locations likely to contain responsive documents using methods reasonably expected to uncover all relevant documents.

### D.    ATF Has Justified its Invocation of Freedom of Information Act Exemptions

#### 1)    ATF Properly Applied Exemption 2

Title 5, United States Code, Section 552 (b)(2) (hereinafter Exemption 2) exempts from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2).  Exemption 2 applies primarily to two types of materials: (1) internal agency matters so routine or trivial that they could not be "subject to ... a genuine and significant public interest;" and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statutes or agency regulations.  Department of Air Force v. Rose, 425 U.S. 352, 369-70 (1976); National Treasury Employees Union v. United States Custom Service, 802 F.2d 525, 528-30 (D.C. Cir. 1986); Crooker v. Bureau of Alcohol, Tobacco and Firearms, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981).  Depending upon the nature of the information, documents will fall within either the "high (b)(2) category" or the "low (b)(2) category."

"High (b)(2)" exempts from mandatory disclosure documents relating to more substantive internal matters.  See Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992). Withholding is permitted in this category to the extent that disclosure would reveal techniques and procedures for

law enforcement investigations or prosecutions, id., would disclose guidelines for law enforcement investigations, or would risk circumvention of an agency statute or impede the effectiveness of an agency's law enforcement activities.  See Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051 (D.C. Cir. 1981) (en banc); Hardy v. ATF, 631 F.2d 653, 656 (9th Cir. 1980).

"High (b)(2)," information must satisfy a two-pronged test.  First, the information must be "predominately internal."  Second, the disclosure of the information must "significantly risk circumvention of agency regulations or statutes."  Crooker, 670 F.2d at 1074.  This analysis need not address the public interest which may exist in the disclosure of such information, since the public interest is legally irrelevant under the anti-circumvention aspect of Exemption 2[7].  Voinche v. FBI, 940 F. Supp. 323, 328 (D.D.C. 1996), aff'd per curiam, No. 96-5304 (D.C. Cir. June 19, 1997); Institute for Policy Studies v. Department of the Air Force, 676 F. Supp. 3, 5 (D.D.C. 1987).

Deference has been accorded law enforcement matters under Exemption 2.  Courts have interpreted this exemption to apply to a wide range of information, including permitting the withholding of general guidelines for conducting investigations, PHE, Inc. v. Dept. of Justice, 983 F.2d 248, 251 (D.C. Cir. 1993); guidelines for conducting post-investigation litigation, Schiller v. NLRB, 964 F.2d at 1207; a training manual with information pertaining to surveillance techniques, Crooker, 670 F.2d at 1073; criteria for prison gang member classification, Jimenez v. FBI, 938 F. Supp. 21, 27 (D.D.C. 1996); and DEA's drug violator codes, Albuquerque Publishing Co. v. Department of Justice, 726 F. Supp. 851, 854 (D.D.C. 1989).

"Low" (b)(2) information refers to internal procedures and practices of an agency, where disclosure would constitute an administrative burden unjustified by any genuine and significant

---

[7]        The public interest aspect is irrelevant in the Crooker analysis for the simple fact that a "FOIA disclosure should not 'benefit those attempting to violate the law and avoid detection.'" Voinche, 940 F.Supp. at 328 (quoting Crooker, 670 F.2d at 1053).

public benefit.  Martin v. Lauer, 686 F.2d 24, 34 (D.C. Cir. 1982).  "Low" (b)(2) information can be protected only if the information qualifies as a personnel rule or internal practice of an agency or is sufficiently related to such a rule or practice.  See Schwaner v. Department of the Air Force, 898 F.2d 793, 795 (D.C. Cir. 1990).  Thus, trivial administrative data, such as file numbers, mail routing stamps, initials, data processing notations, brief references to previous communications, and other like administrative markings are exempt from disclosure.  The notion behind this reasoning is that administrative agencies should not be burdened by responding to requests for trivial information unlikely to be the subject of public interest.  Martin v. Lauer, 686 F.2d at 34.

Exemption 2 may be applied to prevent potential circumvention through a "mosaic" approach-- information which would not by itself reveal sensitive law enforcement information can nonetheless be protected to prevent damage that could be caused by the assembly of different pieces of similar information by a requester.  See Dorsett v. United States Dep't of the Treasury, 307 F. Supp.2d 28, (D.D.C. 2004) 36 (concluding that certain Secret Service information, the disclosure of which in isolation would be "relatively harmless," could "in the aggregate " benefit those attempting to violate the law).

Since the horrific events of September 11, 2001, and given the possibilities for further terrorist activity in their aftermath, all federal agencies are concerned with the need to protect critical systems facilities, stockpiles, and other assets (often referred to as "critical infrastructure") from security breaches and harm. See, Cf. FOIA Post, "Executive Order on National Security Classification Amended" (posted 4/11/03) (noting coverage of "information that reveals current vulnerabilities of systems, installations, infrastructures, or projects relating to national security," in new section 3.3.(b)(8)" of Executive Order 12, 958, as amended).

In this case the withheld documents are internal administrative codes used in a federal

13

criminal law enforcement database, purchase order codes, and ATF equipment costs and infrastructure. LaBrie Decl. ¶ 17. Exemption (b) (2) of the FOIA protects from disclosure material "related solely to the internal personnel rules and practices of an agency," including predominantly internal matters the disclosure of which would risk circumvention of agency regulations or statutes. The redacted information in the records that were provided to Mr. Orfanedes consists of file numbers and other internal administrative codes. Id. ¶ 18. This information is for either administrative and/or law enforcement purposes only and is of no legitimate interest to the public. Id. ¶ 19. The disclosure of this material is either so trivial it does not warrant release or would risk the circumvention of law enforcement and investigatory efforts. Id.

### 2)    ATF Properly Applied Exemption 5

Title 5, United States Code, § 552 (b)(5) ("Exemption 5") protects "inter -agency or intra-agency memorandums or letters which would not be available by law to a party in litigation with the agency." 5 U.S.C. § 552(b)(5). In other words, this exemption protects documents normally privileged in the civil discovery context. FTC v. Grolier Inc., 462 U.S. 19, 26 (1983); NLRB v. Sears Roebuck & Co., 421 U.S. 132, 149 (1975). This section of the FOIA incorporates the attorney-client privilege, the attorney work-product doctrine and the executive "deliberative process privilege that protects candid internal discussions of legal or policy matters." Maricopa Audubon Soc'y v. U.S. Forest Serv., 108 F3. 1082, 1084 n. 1 (9th Cir. 19997).

### 1.    Deliberative Process Privilege

"The deliberative process privilege, also known as the 'executive or governmental' privilege serves many purposes." Eugene Burger Management Corp. v. U.S. Dept. of Housing and Urban Development, 192 F.R.D. 1,4 (D.D.C. 1999). The main purpose of this privilege "which is well established in the law , is ... to prevent injury to the quality of agency decisions.'" Coefield, et al.

14

City of LaGrange, Georgia, 913 F.Supp. 608, 615 (D.D.C. 19996)(quoting NLRB v. Sears Roebuck & Co., 421 U.S. 132, 151 (1975)).  The deliberative process privilege prevents harm to the quality of agency decisions by shielding the opinions, conclusions and reasoning used in the administrative and decision making process of the government.  See United States v. Morgan, (Morgan IV), 313 U.S. 40, 422 (1941); Petroleum Info Corp. v. Dept. of the Interior, 976 F.2d. 1429, 1434 (D.C. Cir. 19920; Access Reports v. Dept. of Justice, 926 F2d. 1192, 1194-1195; (D.C. Cir. 1991); United States v. Farley, 11 F.3d at 1385, 1389 (7th Cir. 1993).

The privilege is designed to encourage frank and uninhibited communication among government officials in the course of creating public policy.  NLRB v. Sears Roebuck & Co., 421 U.S. 132, 149-151 (1975); Petroleum Info. Corp., 976 F2d. at 1434; Access Reports, 926 F.2d at 1194-1195; Farley, 11 F3d. at 1389.  The deliberative process privilege remains even after a final decision has been made, because "disclosure at any time could inhibit the free flow of advice." Federal Open Market Committee v. Merrill, 443 U.S. 340, 360 (1979).

Since "Exemption 5 'was intended to protect not simply the deliberative material, but also the deliberative process of agencies,'" National Wildlife Federation v. U.S. Forest Service, 861 F.2d 114, 1118 (9th Cir. 1974)) (quoting Montrose Chemical Corp. of California v. Train , 491 F2d. 63, 71 (D.C. Cir. 1974)), the courts have found that even factual materials are encompassed within the privilege, if release of such materials would harm the overall deliberative process.

For a document to be covered by the deliberative process privilege, two requirements must be satisfied.  First, it must be predecisional, i.e., "antecedent to the adoption of agency policy." Jordan v. U.S. Dept. of Justice, 591 F2d. 753, 744 (D.C. Cir. 1978)(en banc).  In determining whether a document is predecisional , the Supreme Court has held that an agency need not identify a specific decision in connection with which a document is prepared. NLRB v. Sears, Roebuck &

Co., 421 U.S. at 151 n.18.  The Court recognized that agency deliberations do not always ripen into agency decisions, and that ultimately the privilege is meant to protect the decisional process, rather than any particular document or decision.  Id.; see also Dudman Communications Corp. v. Dept. of the Air Force, 815 F2d 1565, 1568 (D.C. Cir. 1987) ("Congress enacted Exemption 5 to protect the executive's deliberative process – not to protect specific materials.").  It is sufficient for the agency to establish "what deliberative process is involved, and the role played by the documents in issue in the course of that process." Coastal States Gas Corp. v. Dept. of Energy, 617 F2d. 854,868 (D.C.Cir. 1980).

Second, the document must be deliberative in nature, i.e., it must be "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." Vaughn v. Rosen, 523 F.2d 1135, 1143-44 (D.C. Cir. 1975) Deliberative documents frequently consist of "advisory opinions, recommendations, and deliberations comprising parts of a process by which governmental decisions and policies are formulated." NLRB v. Sears Roebuck & Co., 421 U.S. at 150.  Thus, the exemption covers recommendations, drafts documents, proposals, analysis, suggestions, discussions, and other subjective documents that reflect the give-and-take of the consultive process. Coastal States, 617 F. 2d. at 866.  Exemption 5 has been construed to exempt those documents or information normally privileged in the civil discovery context and includes, inter alia, the attorney work product privilege and the pre-decisional deliberative process privilege.  FOIA Exemption (b)(5) permits the withholding of: "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).

Here the items withheld in full were prepared by ATF Special Agents in conjunction with the internal investigation into potential employee misconduct undertaken by ATF's Office of

Professional Responsibility and Security Operations. This meets Exemption (b)(5)'s threshold requirement of "inter-agency or intra-agency memorandum." LaBrie Decl. ¶ 22. The records withheld under Exemption 5 set forth ATF Special Agents' thoughts, impressions, evidence development, and legal theory related to the internal investigation. Id. ¶ 23. Special Agents should be free of the fear that their thought processes, investigative strategies, and case evaluations will, at a later time, be made available to the public. Id.

The Disclosure Division determined that to reveal the information in question would inhibit the candid, internal discussion necessary for efficient and proper litigation preparation in these types of complex cases. LaBrie Decl. ¶ 24. Disclosure would provide insight into the agency's general strategic and tactical approach to investigating internal matters and would therefore harm the very adversarial process which Exemption 5 is designed to protect. Id. The information in question is also deliberative in that the investigative notes consists of the Special Agent's analysis and recommendations regarding the potential violation of federal laws. Id. ¶ 25. If these recommendations and opinions are exposed to public scrutiny, such a release would have the effect of inhibiting the free flow of recommendations and opinions of Special Agents within the ATF. Id.

The Second Supplemental Declaration of Averill Graham addresses the portions of e-mails at ## 110-132 that were redacted pursuant to Exemption 5. Graham Supp. Declar. ¶¶ 4-5. He states that budget information as described in the revised Vaughn index, if disclosed, "would impede open and frank discussion on matters of policy between subordinates and superiors and between all government employees." Graham Second Supp. Declar. Id.

### 3)   ATF Properly Applied Exemption 6

Exemption 6 of the FOIA protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5

U.S.C. § 552(b)(6).  "The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual." Lepelletier v. FDIC, 164 F.3d 37, 46 (D.C. Cir. 1999), (emphasis supplied), quoting Department of State v. Washington Post Co., 456 U.S. 595, 602 (1982).  The Court has also emphasized that "both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person." U.S. Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 763 (1989).

In order to determine whether there would be a "clearly unwarranted invasion of personal privacy," the court must balance the interests of protecting "an individual's private affairs from unnecessary public scrutiny," and "the public's right to governmental information." Lepelletier, 164 F.3d at 46 (interior quotation marks omitted), citing United States Dept. of Defense Dept. of Military Affairs v. FLRA, 964 F.2d 26, 29 (D.C. Cir. 1992), quoting Department of Air Force v. Rose, 425 U.S. 352, 372 (1976).  In determining how to balance the private and public interests involved, the Supreme Court has sharply limited the notion of "public interest" under the FOIA:  "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" Lepelletier, 164 F.3d at 46 (editing by the court, emphasis supplied, interior quotation marks omitted), quoting United States Dept. of Defense v. FLRA, 510 U.S. 487, 497 (1994). See also Reporters Committee, 489 U.S. at 773.  Information that does not directly reveal the operation or activities of the federal government "falls outside the ambit of the public interest that the FOIA was enacted to serve." Id. at 775.  Further, "something, even a modest privacy interest, outweighs nothing every time." National Ass'n of Retired Fed. Employees v. Horner, 879 F.2d 873, 879

(D.C. Cir. 1989); but see Lepelletier, 164 F.3d at 48 (in extraordinary circumstance where the individuals whose privacy the government seeks to protect have a "clear interest" in release of the requested information, the balancing under Exemption 6 must include consideration of that interest).

      The Disclosure Division withheld pursuant to Exemption 6 the names of federal law enforcement employees as well as information by which those individuals could be identified. LaBrie Decl. ¶ 26; revised Vaughn index; Graham Second Supp. Declar. ¶¶ 6-9.  The individuals whose identities have been protected, as set forth above are not the plaintiffs.  Id.; LaBrie Decl.  ¶ 29.  Besides the privacy waivers related to the plaintiffs, no additional waivers were presented that would permit release of any third-party individual's information.  Id.  Revealing this information is unlikely to add to the public's understanding of how an agency works or how well it performs its duties.  Id.; LaBrie Decl. ¶ 30.  On balance, the Disclosure Division determined that the substantial privacy interest, which is protected by withholding this information, outweighs any minimal public interest that would be served by its release.  Id.  Such a release would be "clearly unwarranted." 5 U.S.C. § 552(b)(6).  Id.

### Fees Under FOIA

      The FOIA provides that "each agency shall promulgate regulations . . . specifying the schedule of fees applicable to the processing of requests under this section and establishing procedures and guidelines for determining when such fees should be waived or reduced."  5 U.S.C. § 552(a)(4)(A)(i). The FOIA provides that "[d]ocuments shall be furnished without charge . . . if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  5 U.S.C. § 552(a)(4)(A)(iii).

Pursuant to these provisions, the Department of Justice ("DOJ") has promulgated guidelines for determining when fees should be waived [8].

By letter dated April 20, 2006, ATF's Disclosure Division provided Plaintiff with an estimate of $2,000 in fees to process the remainder of the request and advised that it would do so upon receipt of a reduced amount of $1,200.  LaBrie Decl. ¶ 36; See Exhibit K attached hereto. This estimated fee was based on an evaluation by the then Acting Division Chief for ATF's Information Services Division. LaBrie Decl. ¶ 36.  In order to retrieve e-mails which originated in 2003 it would cost $50.78 per hour in accordance with ATF's contract agreement for such services.  Id.  Furthermore, the Acting Division Chief informed the Disclosure Division that the level of effort necessary for a computer analyst to conduct a full search could take a full week depending on the backup tapes.  Id.  As such the estimated cost would be $2,000.  Id.  Plaintiff has not paid the required fee, did not request a fee waiver, and gave no indication of a willingness to narrow the scope of the request to reduce fees. See id.  Plaintiffs therefore failed to exhaust their administrative remedies with respect to that material, and defendant was not obligated to further process the remainder of plaintiffs' request.  See Kuchta v. Harris, No. 92-1121, 1993 WL 87705, at **3-4 (D. Md. Mar. 25, 1993) (failure to either pay fees or request fee waiver halts administrative process and precludes exhaustion); Centracchio v. FBI, No. 92-0357, slip op. at 5 (D.D.C. Mar. 16, 1993) (" Plaintiff's failure to pay the deposit or request a waiver is fatal to his claim and requires dismissal ....").

---

[8]    The statute and the regulations compiled by the agency must both be taken into consideration when a fee waiver denial is being adjudicated.  See, D.C. Technical Assistance, 85 F.Supp.2d at 48; Campbell, 164 F.3d at 35; Samuel Gruber Education Project v. U.S. Department of Justice, 24 F.Supp.2d 1, 10 (D.D.C. 1998).

**Segregability**

The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue <u>sua sponte</u>." <u>Trans-Pacific Policing Agreement v. United States Customs Service</u>, 177 F.3d 1022, 1028 (D.C. Cir. 1999). The FOIA requires that, if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); <u>Mead Data Cent., Inc. v. United States Dept. of the Air Force</u>, 566 F.2d 242, 260 (D.C. Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements." *Mead Data*, 566 F.2d at 261. The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed. <u>Id</u>. All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated. <u>Armstrong v. Executive Office of the President</u>, 97 F.3d 575, 578-79 (D.C. Cir. 1996). Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." <u>Mead Data</u>, 566 F.2d at 261, n.55.

In this matter, ATF staff reviewed each page of the material identified as responsive to determine whether all non-exempt, reasonably segregable information was released to plaintiff. LaBrie Decl. ¶ 37; Graham Second Supp. Decl. ¶ 10. In processing Plaintiffs' request and in furtherance of ensuring that all segregable material was released to plaintiffs the Disclosure Division disclosed the names of those individuals within ATF who have decision-making

21

authority.  Id. ¶ 31.  In addition, ATF released additional information on August 11, 2008.

Graham Second Supp. Decl. ¶ 10.  This release included segregable material.  Id.  Mr. Graham

determined that although additional small portions are segregable, the words and phrases would

be meaningless and therefore were not released.  Id.  As a result of the two agency reviews for

segregability, and the additional release of information, it has been determined that all

non-exempt, reasonably segregable information has now been provided to plaintiffs.  Id.

## CONCLUSION

The defendant has demonstrated that ATF properly responded to Plaintiffs' FOIA request

and that no information was improperly withheld.  Accordingly, the Court should grant

defendant's second motion for summary judgment.

Respectfully submitted,


          /s/
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


          /s/
RUDOLH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


          /s/
CHARLOTTE A. ABEL, D.C. Bar # 388582
Assistant United States Attorney
555 Fourth Street, N.W., Tenth Floor
Washington, D.C. 20530
(202) 307-2332