UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Donald and Sheryl Hall, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No.  06CV01540 |
| ) | |
| U.S. Department of Justice, ) | |
| ) | |
| Defendant. ) | |

SECOND SUPPLEMENTAL DECLARATION OF AVERILL GRAHAM
CHIEF, DISCLOSURE DIVISION,
BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES

I, Averill Graham, do hereby depose and say:

1. I am the Chief, Disclosure Division, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Department of Justice (DOJ).  In this capacity, I receive all requests made of ATF under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act of 1974 (PA), 5 U.S.C. § 552a.   In this capacity, I also review all requests referred to ATF from other agencies that have located ATF-originated documents in their records while processing their FOIA and PA requests.  I am responsible for processing all FOIA and PA requests, initiating searches relevant to such requests, supervising the determination of what records should be disclosed, processing all documents referred to ATF and to other agencies, and recording all administrative appeals filed with ATF.

2.  I declare that the statements made in this Declaration are on the basis of knowledge acquired by me in the performance of my official duties.

3. I am familiar with the procedures followed by this office in responding to the FOIA request made by the Plaintiffs.

**Exemption 5 Emails**

4. As stated in my Supplemental Declaration dated May 4, 2007, the emails reflected on pages 110-132 concern, among other things, a contract with Unysis. They specifically address how ATF appropriates funds for different budgetary needs and specifically deal with budgeting contractors, including Unysis, and issues with contract performance. These emails include thoughts and impressions on how to move money from one fund to another, question costs associated with particular projects, provide instruction on how one may come to budget estimates, and frank discussions on what IT programs to fund. As internal ATF emails, they clearly meet the intra-agency threshold of (b)(5) and are pre-decisional as to how funds are to be allocated and expended and what is expected from contractors' performance. If these emails were made public they would impede open and frank discussion on matters of policy between subordinates and superiors and between all government employees. Emails provide an excellent forum for frank discussion because they allow for rapid debate without the potential pressure of face-to-face conversation; however, they make such discussions which would be held orally into a permanent record. If these emails were not exempted from FOIA, government employees would be discouraged from the free exchange of ideas and would feel compelled to hold back certain comments and spend time in choosing their language.

5. The emails are predecisional because they were sent during deliberations and before budgetary allocation decisions were made. The public disclosure of these types of documents would have the certain effect of chilling honest discussion via email about

agency needs and funding distribution and would hinder the decision-making process and harm the purpose of FOIA.

**Exemption 6**

6. The Disclosure Division additionally used (b)(6) on numerous occasions to redact out the names of employees and law enforcement agents who were involved in the investigation into contractor and employee misconduct. The names and identifying information included several witnesses whose statements were obtained during the investigation. As the Court noted, the plaintiff's need of the information is not the deciding factor of whether there is a public interest in the information; however, the courts have recognized that the release of identifying information to specific people and in specific situations enhances the privacy necessity of names and identifying information due to the sensitivity of the information.

7. In this case the witnesses are not only subject to harassment by the public for witnessing and being associated with government wrongdoing, but they are also subject to harassment by the individual about whom their statements concern and by others in the workplace. At the time that these redactions were made, Mrs. Hall was an employee of the ATF and she had supervisory status over several individuals. From the facts of the situation and the small office environment in which the witnesses were working, it appeared that the redacted identifying information would make the witnesses' identities obvious to anyone who was familiar with the witnesses and the situation. Additionally, it appeared that the character of the witnesses' statements in identifying internal misconduct had the real possibility of subjecting them to harassment from the plaintiff or potentially from others in the workplace, particularly because of the size and nature of the

office environment. Even though it appears that the plaintiff is no longer an employee, the identification of these witnesses could result in further legal harassment by the plaintiff of her former co-workers. Objectively, the plaintiff has gone through great lengths to obtain her investigatory files and to determine the names or identifying information of witnesses involved in the file, even though no agency action was taken against her in this case. The fact that she is no longer an employee has not seemed to change her drive to obtain those identities. Therefore, without any evidence from the plaintiff herself to the contrary, it seems very likely that the witnesses would be subject to harassment beyond the workplace if their identities were revealed specifically to the plaintiff. The file in question contains information that the Plaintiff has in the past misrepresented herself to ATF employees as another individual. This conduct occurred during the course of an internal investigation to get information about that investigation. This behavior suggests that the Disclosure Division has very valid concerns over potential harassment of those third parties named in the subject documents.

8. Additionally, even if there were no real circumstances in this specific case which warranted the redaction of the witnesses' names and identifying statements because of harassment, there is a serious concern that witnesses would not be willing to come forward candidly and without fear of retribution or harassment if they knew that their statements and identities were going to be disclosed to the public, and particularly the very person whom they witnessed in wrongdoing. If one of the purposes of FOIA is to ensure that the government is accountable for its actions, it seems that the chilling effect on candor of government employee witnesses during investigations would have the exact opposite effect on the ability of the government to hold itself so accountable.

9. The Court mentions that a few names were redacted out of documents which appeared in corresponding indices. This administrative mistake in redactions should not result in the names being further disclosed in the particular documents, because the mere fact that one can deduce whose name is in the document does not demonstrate that the actual documents themselves should be released in the form without redactions. These documents were never released to the public in the full and unredacted form that plaintiff requests—they were merely left unredacted in an index which references the document and do not appear anywhere on the face of the actual document. The fact that a different document associates a particular name with the document does not diminish the privacy concerns here. These documents have never been released in the form in which plaintiff is requesting, and they should not be released now, because the redacted individuals continue to have a vested and compelling privacy interest in their names remaining outside of the public domain, particularly because they are witness statements in an internal investigation and their names in association with the actual statement, as opposed to appearing in a separate index, has the strong possibility of subjecting them to harassment.

**Additional Release and Segregability**

10. By cover-letter dated August 11, 2008 my office released additional information on pages 110 through 132. The information released primarily regarded Ms. Hall's statements to the internal affairs investigator she was forwarding emails. Additionally, small portions of other paragraphs that were segregable from the Exemption b(5) material was released. These changes are reflected on the attached Vaughn Index. Additionally, the complete release was reviewed to determine if any

further portions were segregable. While some pages may have limited words that could be released and not affect the applied Exemptions the result would be a number of meaningless words and phrases. Any additional information released on those pages protecting third-party identities would reveal little if any informational value.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _11_ th day of August, 2008.

Averill Graham
Chief, Disclosure Division